UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                     CASE NO. 23-cr-00214-15

VERSUS                                       JUDGE S. MAURICE HICKS, JR.

DAJUAN JACKSON (15)                          MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

DaJuan Jackson ("Defendant") is charged with one count of conspiracy to distribute marijuana. Before the court is Defendant's Motion to Suppress (Doc. 283). Defendant argues that all evidence derived from a protective sweep of his residence should be suppressed because the sweep was illegal. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The following facts were established by credible evidence. FBI Task Force Officer Stuart Talbot was involved in an investigation of Hikmat Deeb, who was suspected of distributing marijuana. During the investigation, Defendant was identified as assisting Mr. Deeb in the crimes. Talbot conducted a criminal history search of Defendant and discovered that Defendant had prior arrests for second degree murder, aggravated battery, and illegal carrying of weapons. As a result of the investigation, Defendant was indicted with conspiracy to distribute marijuana and a warrant was issued for his arrest.

Talbot planned to execute the warrant at Defendant's residence. He briefed other officers who would assist in the arrest and apprised them of Defendant's criminal history. The officers arrived at Defendant's residence at 6:30 a.m. Talbot and another officer went to the front door, and the other officers stood around the house.

Talbot knocked loudly on the front door and shouted, "FBI arrest warrant." He did this several times before receiving a response. Eventually, Defendant spoke from the other side of the door and said that he was getting dressed. After waiting for several minutes, Talbot knocked on the door again and told Defendant to hurry up and come to the door. One of the officers who was on positioned at the side of the house said that he heard banging or thumping noises inside of the house.

More time passed, and Talbot continued to knock on the door and ask Defendant to come outside. Defendant eventually came to the door. His shirt was not fully on but was instead draped around his neck. Talbot asked if anyone else was inside the house, and Defendant said no. Talbot had Defendant turn around and told him to put his hands behind his back. Defendant insisted on keeping his hands in front of him. Talbot did not know whether Defendant had a weapon in his waistband, so he pinned Defendant's wrists to his hips. Another officer applied cuffs to Defendant.

Talbot moved Defendant from the threshold of the house, and the other officers went inside to conduct a protective sweep. Deputy John Berry of the Caddo Parish Sheriff's office was another officer on the scene. He testified at the hearing that he was one of the officers who performed the protective sweep. He testified that, in his training and experience, weapons and violent offenses often accompany narcotics trafficking.

Based on this knowledge, the noise heard inside the house, and the amount of time it took Defendant to answer the door, Berry believed the sweep was necessary to ensure officer safety. The protective sweep lasted approximately a minute and a half. The officers walked through the rooms of the house and looked in a closet. They did not search anywhere that was smaller than where a body could fit. They saw a bag with marijuana in the living room and a firearm. They then went outside and reported their findings to Talbot. Talbot went inside the house to see the marijuana and gun so that he could fill out an application for a search warrant.

Talbot obtained a search warrant for the residence. Other officers executed the search, and Talbot did not participate. During the search, officers recovered the marijuana and gun and also found more marijuana in different locations in the house and vehicles outside.

**The Motion to Suppress**

Defendant argues that the search of his residence did not meet the requirements for a protective sweep. He asserts that the purpose of the sweep was not to protect the safety of police officers or others, but instead to search for incriminating evidence. Defendant argues that because the search of his home was based on evidence found in the protective sweep, all evidence derived from the search should be suppressed.

**Law and Analysis**

The protective sweep doctrine allows government agents, without a search warrant, to conduct a quick and limited search of premises for the safety of the agents and others present at the scene. United States v. Brown, 230 F.Supp.3d 513, 525-527 (M.D.

La. 2017), citing United States v. Mendez, 431 F.3d 420, 428 (5th Cir. 2005). A protective sweep of a house is legal if (1) the government agents have a legitimate law enforcement purpose for being in the house, (2) the sweep is supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene, (3) the sweep is no more than a cursory inspection of those spaces where a person may be found, and (4) the sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and lasts no longer than the police are justified in remaining on the premises. Id; United States v. Haywood, 2017 WL 6045968, at *3 (W.D. La. 2017), report and recommendation adopted, 2017 WL 6046138 (W.D. La. 2017).

As to the first factor, the agents had a legitimate reason for being in the house because they were executing a narcotics-related arrest warrant for Defendant. As to the second factor, TFO Talbot testified that he and the other officers knew Defendant had had prior arrests for second degree murder, aggravated battery, and illegal carrying of weapons. Talbot testified that he knocked on Defendant's door and announced multiple times that the FBI was present. It took several minutes for a male voice from inside the house to respond that he was getting dressed. Even more minutes lapsed after that, during which time agents heard a booming noise inside the residence. Despite having at least five minutes to get dressed, Defendant was only partially clothed when he answered the door. These facts taken together supported the officers' suspicion that something in the house posed a danger to the officers on the scene.

As to the third and fourth factors, Deputy Berry testified that the protective sweep lasted approximately a minute and a half and that officers did not search anywhere that was smaller than where a body could fit.  Based on all of these factors, the court finds that the officers performed a valid protective sweep.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 283) be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of April, 2024.

Mark L. Hornsby
U.S. Magistrate Judge